J-A14011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST 2006-WFHE3, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WFHE3 | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 1302 EDA 2025 |
| KATHERYNE W. DAVIS | : : | |
| Appellant | | |

Appeal from the Judgment Entered May 6, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2016-007787

BEFORE:  DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 31, 2026**

Appellant, Katheryne W. Davis, appeals from the May 6, 2025 judgment entered in the Delaware County Court of Common Pleas in favor of U.S. Bank National Association ("U.S. Bank") in this mortgage foreclosure action.  After careful review, we affirm the verdict in U.S. Bank's favor, but vacate the entry of judgment and remand for recalculation of the amount of the judgment against Appellant.

The relevant facts and procedural history are as follows.  On July 31, 2006, Appellant borrowed $494,100.00 from Wells Fargo, N.A. ("Wells Fargo") to purchase a home, and secured the loan with a mortgage.  Appellant failed

to make her March 1, 2013 payment, and has not made any subsequent payments.

On April 23, 2013, Wells Fargo assigned the mortgage to U.S. Bank. Pursuant to a limited power of attorney ("LPOA"), U.S. Bank authorized Wells Fargo to remain the loan servicer and to take other action on its behalf to enforce its rights to payment and pursue remedies for non-payment. On October 2, 2013, U.S. Bank filed a complaint in mortgage foreclosure against Appellant. The trial court, however, found that U.S. Bank had failed to prove that it provided Appellant with notice of the foreclosure proceeding pursuant to Act 91 and entered a compulsory nonsuit against U.S. Bank. This prompted U.S. Bank to send Appellant a new Act 91 notice and, on September 9, 2016, file a new complaint in mortgage foreclosure. On August 29, 2017, Appellant filed an answer with new matter.

The case proceeded through discovery, during which Appellant failed to respond to U.S. Bank's request for admissions. As a result, on July 3, 2018, U.S. Bank filed a motion to compel discovery and to deem admitted its request for admissions. On July 30, 2018, the trial court granted U.S. Bank's motion to compel and deemed admitted U.S. Bank's request for admissions pursuant to Pa.R.Civ.P. 4014.[1] Pursuant to that order, the court deemed admitted every element of U.S. Bank's cause of action, including Appellant's execution

---

[1] Rule 4014 provides that "[e]ach matter of which an admission is requested . . . is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission an answer[.]" Pa.R.Civ.P. 4014(b).

of the note and mortgage, failure to make payments since March 1, 2013, and receipt of the required notices. The order further directed Appellant to answer the interrogatories and request for production of documents within 20 days or risk further sanctions.[2]

On May 6, 2024, the trial court held a non-jury trial. At the commencement of trial, counsel for U.S. Bank, over Appellant's objection based solely on U.S. Bank's failure to include the admissions in its pre-trial exhibits list, read into the record Appellant's admissions.

The trial court also admitted into evidence U.S. Bank's Exhibits P-1 through P-6, which were as follows: (1) a copy of the original adjustable rate note (Exhibit P-1);[3] (2) a certified copy of the mortgage (Exhibit P-2); (3) a copy of the recorded corporate assignment of mortgage from Wells Fargo to U.S. Bank (Exhibit P-3); (4) the LPOA (Exhibit P-4) authorizing Wells Fargo to service the loan; (5) Act 91 notice of Appellant's default (Exhibit P-5); and (6) Appellant's loan payment and financial transactions history (Exhibit P-6). In addition, U.S. Bank presented the testimony of Kim Daye, a Senior Loan Document Specialist and Assistant Vice President at Wells Fargo. Mr. Daye

_____

[2] According to Appellant's trial testimony, she ultimately provided responses to the discovery requests, although it is not clear from the record when she did so. N.T. Trial, 5/6/24, at 112. As discussed below, Appellant did not file a motion to withdraw or amend her admissions pursuant to Rule 4014(d) until following the close of her testimony at trial, more than seven years after U.S. Bank served them on her.

[3] U.S. Bank had the original note in the courtroom, both Mr. Daye and the court reviewed it, and the court confirmed that "it comports with the copy that's been afforded to me." *Id.* at 14.

explained that his role at Wells Fargo is to, *inter alia*, "review loans in foreclosure" and "provide business records to counsel." N.T. Trial, 5/6/24, at 8-9.

Regarding U.S. Bank's Exhibit P-4, the Act 91 notice, Mr. Daye explained that Wells Fargo uses a third-party vendor, the Walz Company ("Walz"), to send Act 91 notices to borrowers in default. Mr. Daye further explained that Wells Fargo provides Walz with a template notice, and once a loan is in default, Wells Fargo sends a:

> secure feed to Walz to populate the template that was agreed upon. They input that information, the number of days in default, the amount, date, how [the borrower can] bring the account current. They provide that into the template. Once that information is inputted into the template, that person - - authorized person print[s] that letter, mails that letter off. Once that letter's mailed, they mail it from their site. Once its mailed, they send a transmitter feed back to Wells Fargo indicating that this is the date the letter was mailed, what type of letter was mailed, and it also identifies - - it's input into the MSP system data that says - - that gives a stamp date and time this letter was mailed out.

*Id.* at 19-20; *see also id.* at 67-68. Mr. Daye confirmed that Wells Fargo maintains this document in its business record for the loan in the course of its normally conducted business activities and made by employees with knowledge of the information being entered at the time it was entered. Mr. Daye testified that Wells Fargo's records indicated that the specific Act 91 notice at issue here was addressed to Appellant at the property address and sent both by certified mail and first-class mail.

With respect to Exhibit P-4, the LPOA, Mr. Daye testified that it was "part of Wells Fargo's business record for the loan," "kept in the course of Wells Fargo's regularly conducted business activities," "made by employees with knowledge of this information being entered at the time it's being entered," and it is the regular "business practice of Wells Fargo to make this kind of record." *Id.* at 18.

U.S. Bank also examined Mr. Daye regarding its Exhibit P-7, which contained "judgment figures from [Wells Fargo's] business records" and "identifies payments that due and owed." *Id.* at 24-25. Mr. Daye read into the record the figures comprising the total amount that U.S. Bank alleged was due and owing—more than $1,000,000—including the adjustable interest rates it applied and the period for which it applied the rates to its calculation. According to its calculation, the applicable interest rate varied from a low of 6.25% to a high of 10.25% and rate adjustments took place 14 times between February 1, 2013, and May 1, 2024. *Id.* at 27-29. Appellant stipulated to the amounts listed on Exhibit P-7, but not to the admission of P-7.

Appellant's counsel vigorously cross-examined Mr. Daye, including by conducting extensive questioning regarding the interest rate applicable to Appellant's adjustable-rate loan, particularly because, initially, Appellant's interest rate was indexed to the London Interbank Offered Rate ("LIBOR") which ceased to exist more than a year before trial, and regarding Wells Fargo's calculation of the amount of money Appellant owed on the loan.

In addition, counsel asked Mr. Daye whether Wells Fargo had any written records indicating that it had provided Appellant with notice of the rate change, or an explanation of how the rate would be calculated once the LIBOR ceased to exist. Mr. Daye answered that he did not have any with him and he did not know what documents U.S. Bank's counsel had brought to court.

With respect to Exhibit P-6—Appellant's loan payments and financial transactions history—and, in particular, the interest rates applied to Appellant's loan, during cross-examination, counsel led Mr. Daye through a page-by-page review of the documented applicable interest rates, which changed at regular intervals, and noted numerous inconsistencies between the rates documented in P-6 and those in P-7. *Id.* at 71-75, 82, 87.

At the close of Mr. Daye's testimony, U.S. Bank's counsel moved for admission of exhibits P-1 through P-7. Appellant's counsel objected to the admission of certain of those exhibits, including P-1, which was a copy of the note, on grounds that P-1 was not trustworthy because its sections 12 through 17 appeared to be missing and that U.S. Bank had failed to establish the foundation for its admission because Mr. Daye "clearly [didn't] know anything about the actual instrument" and had "no firsthand knowledge of how this document is created to begin with." *Id.* at 94. U.S. Bank countered that P-1 was "clearly admissible under Rule 9029 [as a] self-authenticating document due to it being a commercial paper." *Id.* at 97. The trial court overruled Appellant's objection and admitted exhibit P-1.

Appellant next objected to the admission of Exhibit P-4, which was the LPOA, on grounds that: (1) because it was a copy and not the original, it violated the best evidence rule; (2) it was hearsay because Mr. Daye was not a custodian of the document or qualified "to talk about these types of legal instruments; and (3) it was not relevant. U.S. Bank argued that P-4 was admissible because Mr. Daye established each element of the Pa.R.E. 803(6) business records exception to the rule prohibiting admission of hearsay evidence. The trial court overruled the objection and admitted Exhibit P-4, as a business record and noted that it was up to the court to make determinations of credibility.

Appellant also objected to the admission of the Act 91 notice—Exhibit P-5—because it was "actually sent by some other corporate entity other than Wells Fargo Bank," U.S. Bank offered no evidence of Walz's record-keeping procedure, mode of preparation or mailing, or if they mailed this particular Act 91 notice. *Id.* at 98. Highlighting that Mr. Daye testified that "Walz sends information about the mailing it is then noted within Wells Fargo's business records," U.S. Bank argued that the Act 91 notice was admissible as a business record. *Id.* at 100. In response to the court's question as to whether U.S. Bank had any proof that Appellant had received the notice, U.S. Bank responded that "the Pennsylvania statute governing Act 91 does not require proof of receipt." *Id.* U.S. Bank further argued that Mr. Daye's "testimony and his familiarity with the Walz system demonstrates that [the notice] was in fact sent, and it's now reflected in the business records of Wells Fargo." *Id.*

The trial court then overruled Appellant's objection and admitted the Act 91 notice.

Appellant objected to the admission of Exhibit P-7 on grounds that Mr. Daye had no knowledge of what information the person who prepared it had reviewed in preparing it, it contained numerous discrepancies between the interests rates listed in P-7 and P-6, which indicated P-7 was not trustworthy, contained numerous mathematical miscalculations, and there was no evidence in the record to substantiate the figures used in the calculations. The trial court sustained this objection and precluded admission of P-7.

Appellant then testified on her own behalf, limiting her testimony to a review of her personal health conditions between 2015 and 2019. At the close of Appellant's testimony, her counsel moved to amend or withdraw Appellant's July 30, 2018 deemed admissions as permitted by Pa.R.Civ.P. 4014(d). Both Appellant and counsel explained to the court that during the period in which U.S. Bank had requested discovery, Appellant underwent three surgeries. Counsel argued that, because of Appellant's health issues, he had difficulty communicating with Appellant, which caused Appellant's delay in providing responses to the discovery requested by U.S. Bank. Appellant, however, proffered no evidence to support her claim that health problems caused her delay in responding to U.S. Bank's discovery requests and no explanation for

the more than seven-year delay in requesting to withdraw or amend the admissions. The court took Appellant's oral motion under advisement.[4]

After hearing testimony and arguments, on December 18, 2024, the trial court entered a verdict in favor of U.S. Bank in the amount of $850,813.38 plus statutory interest at a rate of 6% per annum.

On December 27, 2024, Appellant filed a post-trial motion for judgment notwithstanding the verdict ("JNOV") or for a new trial in which she raised numerous issues including that the trial court erred in relying on Mr. Daye's testimony because, as an employee of Wells Fargo—and not U.S. Bank—Mr. Daye was, *inter alia*, not qualified to provide testimony regarding U.S. Bank's records. Appellant also claimed that U.S. Bank failed to offer any evidence to support, *inter alia*, the trial court's conclusion as to the amount of money Appellant owed to U.S. Bank, that the note was endorsed prior to the commencement of this action, or that Appellant received the Act 91 notice.

On April 22, 2025, the trial court denied Appellant's post-trial motion, and, on May 5, 2025, the prothonotary entered judgment in U.S. Bank's favor.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following five issues on appeal:

---

[4] The trial court ultimately denied Appellant's motion to withdraw or amend the admissions.

A. Whether the trial court committed an error of law or abused its discretion by finding that [U.S. Bank] had standing to proceed in this case?

B. Whether the trial court committed an error of law or abused its discretion by finding that [U.S. Bank] proved the precise amount due on the mortgage despite [U.S. Bank] not being able to offer a sum certain and contradictions between its testimony and documents and presenting a witness who was not competent and had no authority to testify?

C. Whether the trial court committed an error of law or abused its discretion by allowing documents into evidence?

D. Whether the trial court committed an error of law or abused its discretion by allowing admissions into evidence and considering the admissions despite several of the admissions calling for legal conclusions and not being applicable to subsequent transactions?

E. Whether the court has subject matter jurisdiction?[5]

Appellant's Br. at 1 (unnecessary capitalization omitted).

Appellant challenges the trial court's verdict after a non-jury trial. Our standard of review is, thus, well-settled. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weigh the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) (citation and brackets omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will

---

[5] Appellant has not included an argument section in her brief to this Court corresponding with Question Presented "E." We, therefore, decline to address this issue. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]").

- 10 -

not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in the light most favorable to the verdict winner." *Id.* (citation omitted).

We review the denial of a post-trial motion requesting JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Id.*

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner. *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 569 (Pa. Super. 2006). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" *Id.* (citation omitted). "Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed." *Holt v. Navarro*, 932 A.2d 915, 919 (Pa. Super. 2007) (citation omitted). Our scope of review over questions of law, however, is plenary. *Buckley v Exodus Transit & Storage Corp.*, 744 A.2d 298, 305 (Pa. Super. 1999).

- 11 -

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Quimby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1074 (Pa. 2006) (internal citations omitted). When an appellant challenges a verdict on this latter basis, we will grant relief only "when the [] verdict is so contrary to the evidence as to shock one's sense of justice." *Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.*, 126 A.3d 959, 967 (Pa. Super. 2015) (citation omitted).

In her first issue, Appellant claims that the trial court erred when it found that U.S. Bank had standing to prosecute this case when U.S. Bank was not the noteholder. Appellant's Br. at 6-17. Appellant contends that the June 1, 2023 LPOA identified "U.S. Bank Trust Company National Association as Trustee" the successor-in-interest to U.S. Bank and that, despite its status as predecessor-in-interest, U.S. Bank "without authority, continued to prosecute the case." *Id.* at 8. Appellant argues that after June 1, 2023, U.S. Bank "was deprived of any of its interest in the case and ceased to be the Noteholder." *Id.* at 9. Nevertheless, Appellant claims, U.S. Bank "continued to prosecute the foreclosure as though it was the Noteholder and had the authority to prosecute the foreclosure." *Id.* Appellant claims, without citation to any case law, when U.S. Bank transferred its interest to its wholly-owned subsidiary U.S. Bank Trust Company National Association as Trustee, U.S. Bank

- 12 -

"negated" the written authorization it gave Wells Fargo to act as the loan servicer.[6] *Id.*

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure. Pa.R.A.P. 2101-2119. As this Court has made clear, we "will not act as counsel[.]" ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007). "We shall not develop an argument for an appellant, nor shall we scour

---

[6] Appellant has also presented two additional sub-claims within her first issue on appeal: (1) that the court lacked subject matter jurisdiction over this case because U.S. Bank failed to join an indispensable party and (2) that the court "should have sustained Appellant's objection to [admission] of the note" because the note presented to the court at trial was purportedly incomplete. Appellant's Br. at 9-17. We conclude, first, however, that Appellant did not include the first of these sub-issues in her first question presented and it is not fairly suggested thereby; thus, it is waived. ***See*** Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, even if Appellant had not waived this issue by failing to include it in her statement of questions presented, we would find it waived because she did not raise this issue in her Pa.R.A.P. 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement . . . are waived.").

With respect to her contention that the court erred in denying her objection to admission of the purportedly incomplete note and that the incomplete note "deprived [U.S. Bank] of noteholder status," we observe that Appellant did not cite to or analyze any authority pertinent to evidentiary challenges and we find the singular case cited to by Appellant, ***Fidelity Trust Company v. Gardiner***, 155 A.2d 405 (Pa. Super. 1959), which concerned a petition to open a confessed judgment where the endorsement on the underlying instrument was illegible, inapposite.

the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018).

Appellant has not provided us with any authority to support her contention that only U.S. Bank's successor-in-interest, and not U.S. Bank itself, had authority to continue to prosecute the instant mortgage foreclosure action. Without any legal basis to support Appellant's argument, we reject it and conclude that the trial court properly found that U.S. Bank had standing to prosecute the case.

In her second issue, Appellant claims that U.S. Bank failed to prove the exact amount due on the note. Appellant's Br. at 17-25. She contends that the U.S. Bank's Exhibit P-6—Appellant's account history—does not contain a sum certain due and that Mr. Daye's testimony "was filled with gaps and contradictions." ***Id.*** at 17. Appellant further claims that "the underlying [p]romissory [n]ote requires an adjustment in the interest rate every six months and, therefore, the trial court's finding of a fixed interest rate from July 31, 2006 through December 31, 2023[,] is in error and [U.S. Bank] failed to meet its burden in proving the 'precise amount due.'" ***Id.*** at 25; ***see also id.*** at 21 (where Appellant claims that the court's application of a fixed interest rate is "inherently[] incorrect").

In addressing this issue, the trial court explained as follows:

> The loan payment history (P-6) detailed all financial transactions for the loan commencing with the inception on July 31, 2006[,] through December 31, 2023. The adjustable[-]rate note (P-1) established an interest rate at 5.86% above the [LIBOR] index and be subject to amendment at 6 month intervals. The loan

- 14 -

payment history applied an interest rate of 6.375% commencing in 2013 after the default through the end of 2023.

[Appellant] complains that [U.S. Bank] failed to establish a total sum certain due on the loan and support the interest rate adjustments. [Appellant] informed Kim Daye that the [LIBOR] rate index had been sunset in June 2023. This court found the loan history (P-6) to be credible and used that document to enter the amount owed, $850,813.38. [Appellant] has not made any payments since March 2013 and did not complain of escrow advances by [U.S. Bank] for real estate and other property charges. [Appellant] did not challenge the outstanding principal. [Appellant] would have had access to the published [LIBOR] rates and failed to present any conflict with the interest formula in the loan history. The annual loan account entries in P-6 enabled this court to calculate the sum certain. [U.S. Bank's] higher payoff demand [] was rejected at trial due to lack of foundation.[7]

Trial Ct. Op., 7/21/25, at 7.

As a prefatory matter, we observe that counsel for U.S. Bank admitted at trial that Exhibit P-6 did not contain a sum certain due and owing. N.T. Trial at 105. Additionally, it is undisputed that the note at issue had an adjustable interest rate, subject to adjustment every six months. Therefore, following our review of Exhibit P-6 and Mr. Daye's extensive testimony interpreting the information contained therein, we are constrained to find that the record does not support the trial court's calculation as to the amount of money due and owing to U.S. Bank from Appellant, in particular because the court applied a fixed rate of interest of 6.375%, where all evidence indicates the loan was subject to an adjustable interest rate. We, thus, vacate the $850,813.38 judgment in favor of U.S. Bank and remand for a hearing for the

_____

[7] U.S. Bank asserted that Appellant owed more than $1,000,000 on the loan at the time of trial. N.T. Trial at 25.

parties to present evidence establishing the various interest rates applicable over the time Appellant has been in default, and for the trial court to recalculate the amount of the judgment.[8]

In her third issue, Appellant claims that the trial court erred in admitting as evidence certain documents proffered by U.S. Bank. Appellant's Br. at 25-34. Specifically, Appellant contends that the court erred in admitting Exhibit P-5—the Act 91 notice—because it was prepared and allegedly sent by a third party and Exhibit P-4—a copy of the LPOA—because U.S. Bank's failure to produce an original version of it violated the best evidence rule.

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014). We will not overturn such a ruling absent an abuse of discretion or misapplication of law. *Id.*

With respect to the Act 91 notice, Appellant makes two evidentiary challenges and one substantive challenge. Appellant's Br. at 27-29. First, Appellant appears to argue that the trial court erred in admitting the Act 91 notice because Mr. Daye failed to properly authenticate it. *Id.* at 28. Second, Appellant contends that the Act 91 notice is hearsay and does not fall within any exceptions to the hearsay rule. *Id.* at 29. Finally, Appellant argues that

_____

[8] We note that, although it was Appellant who appealed from the amount of the original judgment, on remand the trial court may properly find that the amended judgment exceeds the original judgment.

the evidence does not support the trial court's conclusion that Appellant received the Act 91 notice. *Id.* at 29. We address these claims *seriatim*.

Pa.R.E. 901 governs the authentication of evidence. Rule 901 requires a proponent of "an item of evidence" to authenticate it by producing "evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a).

Here, U.S. Bank produced evidence, *i.e.* Mr. Daye's testimony, that the Act 91 notice proffered to the court is what U.S. Bank claimed it is—notice of foreclosure pursuant to Act 91. N.T. Trial at 19. Following our review, we conclude that Mr. Daye's testimony was sufficient to identify the Act 91 notice and, therefore, that the trial court properly admitted the Act 91 notice as evidence.

We also reject Appellant's argument that the trial court erred in admitting the Act 91 notice because it was hearsay. Our review of the notes of testimony indicates that U.S. Bank offered the Act 91 notice for a non-hearsay purpose, *i.e.*, as evidence to show that Appellant received notice that her loan was in default. Therefore, the Appellant's claim that the Act 91 notice was hearsay not subject to any exception fails.

Last, we find that the evidence was sufficient to establish that Appellant received the Act 91 notice. On April 19, 2018, U.S. Bank sent requests for admissions to Appellant. The request for admissions included a request that

Appellant admit that "[y]ou received the Statutory Notice."[9] Req. for Admiss., 4/19/18, at 11. When Appellant failed to respond to the request for admissions, on July 30, 2018, the trial court deemed Appellant to have admitted U.S. Bank's request for admissions, including the request regarding Appellant's receipt of the Act 91 notice. Accordingly, the trial court properly determined that Appellant received the Act 91 notice.[10]

Appellant next claims that the trial court abused its discretion in admitting the LPOA because the copy of it produced at trial violated the best evidence rule and U.S. Bank offered no testimony to explain its "loss or destruction" so that the trial court could "determine whether production of the original document [was] feasible." Appellant's Br. at 32.

The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless the[ rules of evidence], other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Rule 1003 provides, however, that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* at 1003. Our Supreme Court has explained that

---

[9] U.S. Bank defined "Statutory Notice" in the request for admissions to include the Act 91 notice "dated July 8, 2016[,] addressed to [Appellant]." Request for Admissions, 4/19/18, at 4.

[10] Although our analysis differs from that of the trial court, we may affirm on any ground. *See Lynn v. Nationwide Ins. Co.*, 70 A.3d 814, 823 (Pa. Super. 2013) (reiterating the general rule that "we may affirm a trial court's ruling on any basis supported by the record on appeal.").

"when the content of a writing is closely related to a controlling issue, the party seeking to prove that issue must offer either the original **or a duplicate**." ***Commonwealth v. Talley***, 265 A.3d 485, 531 (Pa. 2021) (emphasis added); ***see also generally*** DANIEL J. ANDERS ET AL., OHLBAUM ON THE PENNSYLVANIA RULES OF EVIDENCE (2026 ed.).

Our review of the notes of testimony confirms that, in objecting at trial to the admission of the LPOA, Appellant did not raise a "genuine question" about the original and she did not argue that the "circumstances ma[de] it unfair to admit the duplicate." ***See*** Pa.R.E. 1003. Accordingly, pursuant to Rule 1003 and ***Talley***, ***supra***, the copy offered by U.S. Bank was "admissible to the same extent as the original." We, thus, conclude that the trial court properly admitted the LPOA as evidence, albeit on grounds different from those found by the trial court.

In her final issue, Appellant contends that the trial court abused its discretion in denying her oral request to strike the order court's July 30, 2018 order deeming admitted U.S. Bank's request for admissions. Appellant's Br. at 34-40. Appellant argues that, "[b]ut for extensive, ongoing[,] and serious health issues, Appellant would have been able to timely respond to [U.S. Bank's r]equest for [a]dmission[]" and that her failure to timely respond did not prejudice U.S. Bank because the requested admissions "were either legal conclusions or information that was testified to by [Appellant] and [U.S.Bank], based upon its [e]xhibits and allegations, is in possession of the proofs it intended to present at trial." ***Id.*** at 39. Appellant, however, has not explained

- 19 -

why she waited more than seven years to request to withdraw or amend her admissions.

Rule 4014(d) provides, in relevant part, that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Pa.R.Civ.P. 4014(d).

"[C]ourts have considerable discretion over whether to permit withdrawal or amendment of admissions"; however, "once trial has begun a court may grant a motion to withdraw only if it determines that doing so is necessary to prevent manifest injustice." *Hysong. v. Lewicki*, 811 A.2d. 46, 50 (Pa. Cmwlth. 2002).[11]

Here, at the close of Appellant's testimony her counsel moved to amend or withdraw Appellant's admissions as contemplated by Rule 4014(d). As noted above, at trial, Appellant explained her failure to timely respond to U.S. Bank's discovery requests. Appellant, however, proffered no evidence to support her claim that health problems caused her delay in responding to U.S. Bank's discovery requests and no explanation for the seven-year delay in seeking to withdraw or amend the admissions.

The trial court explained that it denied Appellant's oral motion to withdraw or amend her admissions because "the trial transcript and exhibit supported [U.S. Bank's] complaint and the admissions were part of the docket

---

[11] Decisions of the Commonwealth Court are not binding on this Court, we may, however, choose to follow them if we find them persuasive. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. 2009).

record for over seven years." Trial Ct. Op. at 7. In other words, the trial court found that Appellant did not suffer prejudice as a result of her admissions because, as even Appellant concedes, the testimony and documentary evidence supports U.S. Bank's claims.

We discern no abuse of discretion in the trial courts denial of Appellant's motion to withdraw or amend her admissions which she waited more than seven years and until the end of trial to raise before the court. The record reflects that, notwithstanding Appellant's admissions, her counsel ably and vigorously litigated the merits of her proffered defenses and Appellant has not claimed, let alone demonstrated, that granting her motion was necessary to prevent manifest injustice.[12] Accordingly, Appellant is not entitled to relief on this claim.

In sum, we find that the record does not support the trial court's calculation of the amount of the judgment in U.S. Bank's favor. Accordingly, we vacate the judgment, and remand for the trial court to hold a hearing within 60 days on the limited issue of the applicable rates of interest and the sum certain due, and to enter an amended judgment. In all other respects, we affirm.

Judgment vacated. Case remanded. Jurisdiction relinquished.

---

[12] We further note that the only controlling case cited by Appellant in support of her argument, **Krepps v. Snyder**, 112 A.3d 1246 (Pa. Super. 2015), is distinguishable from the instant case as that case pertains to the trial court's refusal to permit the plaintiff from reading to the jury admissions allegedly made by the defendant, and not, as here, to the trial court's consideration of the defendant's motion to withdraw or amend admissions.

- 21 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/31/2026